## IN THE UNITED STATE DISTRCT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| GREGORY MANN, CEDRIC SINGLETON, and KATINA SKINNER, | |
| Plaintiffs, | Civil Action File No.: |
| v. | |
| HOUSTON COUNTY ASSOCIATION FOR EXCEPTIONAL CITIZENS, INC. d/b/a HAPPY HOUR SERVICE CENTER, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiffs Gregory Mann ("Mann"), Cedric Singleton ("Singleton"), and Katina Skinner ("Skinner") (collectively "Plaintiffs") bring this action against their former employer Defendant Houston County Association for Exceptional Citizens, Inc. d/b/a Happy Hour Service Center ("HCAEC," "Happy Hour," or "Defendant") for violation of their federal statutory rights alleging as follows:

### Statement of Claims, Parties, Jurisdiction, and Venue

1.

This is a race discrimination claim based on the discriminatory termination of Plaintiffs in violation of 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").

2.

Plaintiffs are residents of Georgia and submit themselves to the jurisdiction of this Court.

3.

Defendant Houston County Association for Exceptional Citizens, Inc. is a Georgia nonprofit corporation subject to the jurisdiction of this Court and may be served through its Registered Agent, Houston County Association for Exceptional Citizens, Inc., care of CEO and Executive Director, Maxwell Stanley Blaxton, at 202 N. Davis Drive, Warner Robins, Georgia 31093.

4.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this matter involves federal questions arising under Title VII and § 1981.  This court also has jurisdiction pursuant to 42 U.S.C. § 2000e-5.

5.

Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because the acts, events, and occurrences giving rise to Plaintiffs' claims took place in Warner Robins, Georgia, which is within this judicial district and division.

## **Administrative Remedies**

6.

Plaintiff Mann filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 2, 2021, alleging race discrimination.

7.

Plaintiff Singleton filed a charge of discrimination with the EEOC on April 2, 2021, alleging race discrimination.

8.

Plaintiff Skinner filed a charge of discrimination with the EEOC on April 2, 2021, alleging race discrimination.

9.

Plaintiffs Mann and Singleton were issued a Notice of Right to Sue letter on January 26, 2022, and this lawsuit is timely filed on their behalf.

10.

Plaintiff Skinner was issued a Notice of Right to Sue letter on November 24, 2021. The Parties entered into a tolling agreement on February 17, 2022, to toll the statute of limitations for Plaintiff Skinner through and including March 24, 2022. This lawsuit is timely filed on behalf of Plaintiff Skinner.

## Factual Background

### 11.

Happy Hour is an adult development learning center that works with adult clients who have development issues to teach and work on improving life, social, and job skills.

### 12.

Plaintiffs are all African American.

### 13.

Plaintiff Mann was a long-term employee of Happy Hour who was hired on or around August 13, 2002, serving the clients of Happy Hour for almost 20 years. Plaintiff Mann most recently served as a supervisor responsible for staff payroll and training and management of staff, among other responsibilities.

### 14.

Plaintiff Mann was hired by Happy Hour on March 26, 2018, as a One-on-One Instructor responsible for working one-on-one with an assigned client to develop and improve life, social, and job skills.

### 15.

Plaintiff Skinner was hired by Happy Hour as an Instructor Aid on May 23, 2018, and worked with multiple clients to set and monitor progress of goals related to life, social, and work skills.

16.

On February 16, 2021, two developmentally challenged clients ("Client P" and "Client M") of Happy Hour engaged in a verbal altercation near the end of the workday. The verbal altercation stopped and then started at various points over the course of approximately 5 minutes.

17.

Due to the nature of Happy Hour's clients' developmental disabilities, it was not uncommon for clients to have verbal altercations or express verbal aggression at Happy Hour, and the two clients who engaged in the verbal altercation on February 16, 2021, had done so before without escalation.

18.

On February 26, 2021, clients and staff of Happy Hour were working to complete end-of-day tasks to permit everyone to leave for the day.

19.

Client P and Client M were assigned to Plaintiff Skinner.

20.

For much of the verbal altercation, Plaintiff Skinner was outside of the building instructing another client about cleaning with chemicals.

21.

One-on-one instructors were given instructions not to step in or engage with

any client of Happy Hour involved in an altercation who was not assigned to the one-on-one instructor.

22.

Happy Hour staff was also trained and instructed that only female staff should intervene with female clients, and male staff with male clients.

23.

Another one-on-one instructor, B.J. Hogsett, is a white female who was present during the verbal altercation on February 16, 2021.

24.

At various points during the incident, Ms. Hogsett can be seen on surveillance footage visible laughing, along with others in the room, about the altercation and/or statements being made by the clients.

25.

At one point after Plaintiff Skinner re-entered the room, Plaintiff Skinner told Client P to go sit down.

26.

Plaintiff Singleton told Client M to go back to her station at one point during the verbal altercation.

27.

Plaintiffs and Ms. Hogsett all continued their end-of-day duties to close for

the day.

28.

At one point, Plaintiff Singleton sat down at a desk in between the two clients.

29.

Client P walked up behind Plaintiff Singleton. While talking, Client quickly walked up towards Client P over the course of a few seconds, leading to Client P pushing Client M.

30.

Client M fell and was later determined to have fractured her wrist.

31.

On February 19, 2021, the 3 African American Plaintiffs were terminated.

32.

Ms. Hogsett, a Caucasian, was only suspended for 3 days.

33.

While Plaintiff Skinner was out for vacation on or around September 9, 2020, Ms. Hogsett was assigned to help Client M—one of the same clients involved in the altercation on February 16, 2021—and Client M had another altercation with a different client of Happy Hour. Client M sustained a head injury and was taken to the hospital.

34.

Ms. Hogsett was not terminated for the September 9, 2020, incident.

35.

The Executive Director, Stanley Blaxton, and Human Resources Director, Lori Cook, directed and led the termination of Plaintiffs. Mr. Blaxton and Ms. Cook are both Caucasian.

### Count I: Race Discrimination in Violation of 42 U.S.C. § 1983 and Equal Protection Claim

36.

Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

37.

It is unlawful under 42 U.S.C. § 1981 to intentionally discriminate against an employee based on the employee's race.

38.

Defendant subjected Plaintiffs to disparate treatment due to their race (African American) in violation of § 1981 because Plaintiffs were treated differently than a Caucasian employee involved in the same incident.

39.

Defendant's decision to terminate Plaintiffs but not the Caucasian employee because of their race is a violation of § 1981.

40.

At the time of Plaintiffs' termination, Defendant knew that disciplining Plaintiffs more severely than their Caucasian colleague because of their race violated § 1981.

41.

Defendant's discriminatory acts were done intentionally and with malice or reckless indifference to Plaintiffs' rights under § 1981.

42.

As a direct result of Defendants' unlawful conduct, Plaintiffs suffered economic damages including a loss of income and benefits for which Defendant is liable. Plaintiffs also suffered compensatory non-monetary damages for mental and emotional distress for which Defendant is liable, the amount of which shall be determined at trial. Plaintiffs have also incurred attorneys' fees and costs for which Defendant is liable.

43.

Defendant's discriminatory conduct was willful and intentional, with reckless indifference to Plaintiffs' federally protected rights, and Plaintiffs are entitled to punitive damages.

## Count II:  Race Discrimination in Violation of
## Title VII of the Civil Rights Act

### 44.

Plaintiffs incorporate by reference the preceding allegations as if fully restated herein.

### 45.

Title VII forbids terminating or otherwise taking adverse actions against an employee if at all motivated by the employee's race.

### 46.

Defendant is an employer as defined by Title VII, 42 U.S.C. § 2000e(b).

### 47.

Plaintiffs were in a protected class based on their race (African American).

### 48.

Defendant subjected Plaintiffs to disparate treatment due to their race (African American) in violation of Title VII because Plaintiffs were treated differently than a Caucasian employee involved in the same incident

### 49.

Defendant's decision to discriminatorily discipline Plaintiffs was motivated by Plaintiffs' race in violation of Title VII.

### 50.

Defendant's unlawful conduct caused Plaintiffs to suffer economic and non-

economic damages, including, but not limited to, lost earnings and benefits, lost opportunities for advancement, mental and emotional distress, and attorneys' fees and costs for which Defendant is liable.

51.

Defendant's discriminatory conduct was willful and intentional, with reckless indifference to Plaintiffs' federally protected rights, and Plaintiffs are entitled to punitive damages.

## **JURY DEMAND**

52.

Plaintiffs demand a jury trial on all claims so triable.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.    Order a jury trial on all issues so triable;

2.    Enter judgment against Defendant on all Counts herein;

3.    Award Plaintiffs full back pay and benefits;

4.    Order Plaintiffs to be reinstated or, in the alternative, award Plaintiffs front pay for the diminution of Plaintiffs' future earnings;

5.    Award Plaintiffs compensatory and punitive damages against Defendant;

6.    Award pre- and post-judgment interest at the maximum rates allowable by law;

7.      Award special damages for all out-of-pocket costs and expenses that Plaintiffs would not have incurred but for the actions of Defendant's unlawful conduct, including costs incurred in bringing this action and their reasonable attorneys' fees; and

8.      Grant such other additional relief as this court deems necessary, appropriate, proper, or just.

Respectfully submitted: March 24, 2022.

*/s/ J. Daniel Cole*
J. Daniel Cole
Georgia Bar No. 450675
dcole@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
75 14th Street, N.E., 26th Floor
Atlanta, Georgia 30309
T: (404) 873-8000
F: (404) 873-8050

*Counsel for Plaintiffs*